
```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO.  03-CR-10331 (RGS) |
| | ) | |
| v. | ) | VIOLATIONS: |
| | ) | |
| 1.  CLAUDIA NAVARRO, | ) | |
|     a/k/a CLAUDIA | ) | 18 U.S.C. § 1956(h) |
|     NAVARRO-MONTERO, | ) | Conspiracy to Commit Money |
| | ) | Laundering |
| and | ) | |
| | ) | 18 U.S.C. § 1957 - |
| 2.  IVAN VELEZ, | ) | Engaging in Monetary Transactions |
|     Defendants. | ) | in Property Derived from Specified |
| | ) | Unlawful Activity |
| | ) | |
| | ) | 18 U.S.C. § 2 - |
| | ) | Aiding And Abetting |
| | ) | |
| | ) | 18 U.S.C. § 982 - |
| | ) | Money Laundering Forfeiture |

<u>SUPERSEDING INDICTMENT</u>

<u>COUNT ONE</u>
(18 U.S.C. §§ 1956(h) --
Conspiracy to Commit Money Laundering)

The Grand Jury charges that:

From a time unknown to the Grand Jury, but at least by in or about August 2000, and continuing thereafter until at least April 2003, in Dracut, Weston, Lowell, Waltham, and Billerica, in the District of Massachusetts, in New York, in Florida, and in Cali, Colombia, and elsewhere,

      1. CLAUDIA NAVARRO,
         a/k/a CLAUDIA NAVARRO-MONTERO,

      and

      2. IVAN VELEZ,

the defendants herein, did unlawfully and knowingly combine, conspire, confederate, and agree with each other and with persons known and unknown to the Grand Jury, to commit certain offenses under Title 18, United States Code, Sections 1956 and 1957, as follows:

(a) to engage in financial transactions affecting interstate commerce and foreign commerce, knowing that the property involved represented the proceeds from some form of unlawful activity, that is, the distribution of controlled substances, and knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of this specified unlawful activity in violation of 18 U.S.C. 1956(a)(1); and

(b) knowingly to engage in monetary transactions, affecting interstate commerce and foreign commerce, in criminally derived property that was of a value greater than $10,000 in violation of 18 U.S.C. 1957.

### Manner and Means of the Conspiracy

1. It was part of the conspiracy that OSCAR PATINO and defendants **CLAUDIA NAVARRO** and **IVAN VELEZ** engaged in financial transactions involving the deposit of cash proceeds and money orders, which involved the proceeds of a specified unlawful activity, into bank accounts, including the following two bank

accounts in the District of Massachusetts, to conceal or disguise the nature and source of the proceeds of illegal activity:

>Sovereign Bank
>Account #30900001923
>USCL Inc.
>75 C Street
>Dracut, MA 01826 (hereinafter and for purposes of the entire Indictment the "USCL Account")
>
>Sovereign Bank
>Account #3090015598 (originally Fleet Bank Account #9405284110)
>Claudia Navarro-Montero
>D/B/A Universal De Suministros
>552 North Avenue
>Weston, MA 02493 (hereinafter and for purposes of the entire Indictment the "Navarro Account")

a. The UCSL Account and the Navarro Account were both opened as joint accounts by OSCAR PATINO and **CLAUDIA NAVARRO**.

b. At all times relevant to the Indictment, the USCL Account and the Navarro Account were joint accounts over which only OSCAR PATINO and **CLAUDIA NAVARRO** had signature authority.

c. At all times relevant to the indictment, OSCAR PATINO resided at 75 C Street in Dracut, Massachusetts and worked at 552 North Avenue in Weston, Massachusetts.

d. At all times relevant to the Indictment, defendant **CLAUDIA NAVARRO** was doing business as Universal De Suministros.

e. At all times relevant to the Indictment, Sovereign Bank was a domestic financial institution within the meaning of Title 31, United States Code, Section 5313(a).

2. It was part of the conspiracy that OSCAR PATINO and

**CLAUDIA NAVARRO** arranged for or caused funds to be wire transferred into the USCL Account and the Navarro Account to further conceal or disguise the nature and source of the unlawful proceeds.

    3. It was part of the conspiracy that OSCAR PATINO and **CLAUDIA NAVARRO** engaged in financial transactions involving the purchase of goods for third-party Colombian businesses or individuals, involving the transfer of funds by check or wire from the USCL Account and the Navarro Account to further conceal or disguise the nature and source of the unlawful proceeds.

    4. It was part of the conspiracy that OSCAR PATINO and **CLAUDIA NAVARRO** engaged in monetary transactions in criminally derived property that was of a value greater than $10,000.

    5. It was part of the conspiracy that defendant **IVAN VELEZ** was to arrange, directly or indirectly, for OSCAR PATINO and **CLAUDIA NAVARRO** to receive cash and money orders as payment of debt from a Colombian business, Mundo Maquinas, to further conceal or disguise the nature and source of the unlawful proceeds. At all times relevant to the indictment, **IVAN VELEZ** worked at General Express Services, which did business with Mundo Maquinas.

    6. It was part of the conspiracy that on or about May 28, 2001, **CLAUDIA NAVARRO** in Cali, Colombia sent an email to OSCAR PATINO in the District of Massachusetts. In this email, **CLAUDIA**

**NAVARRO** instructed OSCAR PATINO to pick up $100,000 in cash from a man in Miami, Florida.

7. It was part of the conspiracy that **IVAN VELEZ** was to meet OSCAR PATINO and deliver this $100,000 cash to OSCAR PATINO. It was part of the conspiracy that **CLAUDIA NAVARRO** told **IVAN VELEZ** that her husband OSCAR PATINO would be the person to meet **IVAN VELEZ** in Miami to pick up the cash.

    a. On or about May 30 and May 31, 2001, OSCAR PATINO flew from Boston, Massachusetts to Miami, Florida. OSCAR PATINO met **IVAN VELEZ** at General Express Services. **IVAN VELEZ** and OSCAR PATINO then drove to **IVAN VELEZ**' home. At his home, **IVAN VELEZ** gave OSCAR PATINO at least $80,000 in cash. OSCAR PATINO then flew back to Boston, Massachusetts with this cash.

    b. In the May 28, 2001 email, defendant **CLAUDIA NAVARRO** also instructed OSCAR PATINO to have the cash put into the USCL Account.

    c. On or about the following dates, OSCAR PATINO structured at least $89,000 cash into the following Sovereign Bank accounts, by breaking down this sum of cash into amounts below $10,000, and by depositing these smaller amounts of cash at Sovereign Bank branches, in the District of Massachusetts, as follows:

| Date | Amount | Branch of Deposit | Account |
|---|---|---|---|
| a. May 31, 2001 | $9,000 | Dracut | USCL |

| | | | | |
|---|---|---|---|---|
| b. | May 31, 2001 | $9,000 | Lowell City Hall | USCL |
| c. | May 31, 2001 | $9,000 | Lowell Merrimack Street | USCL |
| d. | May 31, 2001 | $9,000 | Lowell Wood Street | USCL |
| e. | May 31, 2001 | $9,000 | Chelmsford Center | USCL |
| f. | May 31, 2001 | $9,000 | Billerica | USCL |
| g. | June 1, 2001 | $9,000 | Moody Street Waltham | USCL |
| h. | June 1, 2001 | $9,000 | Weston | USCL |
| i. | June 4, 2001 | $9,000 | Center Street Weston | NAVARRO |
| j. | June 4, 2001 | $8,000 | Moody Street Waltham | NAVARRO |

d. In the May 28, 2001 email, defendant **CLAUDIA NAVARRO** also instructed OSCAR PATINO to wire transfer $63,491.10 of this deposited cash to Juki Union Special, Inc.

e. On or about June 1, 2001, OSCAR PATINO wire transferred $63,446.10 of the cash he deposited into the USCL Account on behalf of Juki Union Special Account, to account number 210-004-687, at the Bank of Toyko Mitsubishi Trust in New York.

8. It was part of the conspiracy that in addition to the $9,000 and $8,000 cash deposits OSCAR PATINO made on June 4, 2001, he also deposited a check for $3,000 into the NAVARRO account on June 6, 2001 (totaling $20,000 for the period). On or about June 6, 2001, defendant **CLAUDIA NAVARRO** wrote out and signed four (4) sequential checks out of the NAVARRO account, each check in the amount of $5,000 (totaling $20,000), each check

payable to the same person, Antonio Jose Isaacs. These four checks were then cashed and deposited all on the next day, June 7, 2001.

9. It was part of the conspiracy that on or about the following dates, at defendant **CLAUDIA NAVARRO's** direction, OSCAR PATINO received large bundles of money orders via delivery companies, from sender individuals unknown to him. For example, on or about August 27, 2001, **CLAUDIA NAVARRO** emailed OSCAR PATINO stating that she wanted him to collect the other $20 (meaning $20,000). As set forth below, on or about August 29, 2001, PATINO collected and deposited $20,000 in money orders. OSCAR PATINO deposited the following money orders into Sovereign Bank accounts, in the District of Massachusetts, as follows:

| Date | Amount | Account |
|---|---|---|
| a. August 15, 2000 | $3,900 | NAVARRO |
| b. August 15, 2000 | $9,300 | NAVARRO |
| c. August 15, 2000 | $9,850 | NAVARRO |
| d. August 16, 2000 | $9,550 | USCL |
| e. March 2, 2001 | $4,000 | USCL |
| f. March 8, 2001 | $5,000 | USCL |
| g. March 19, 2001 | $5,000 | NAVARRO |
| h. March 19, 2001 | $5,000 | USCL |
| i. April 23, 2001 | $2,663.15 | NAVARRO |
| j. April 23, 2001 | $8,147.02 | USCL |

| | | | |
|---|---|---|---|
| k. | April 23, 2001 | $9,190.62 | USCL |
| l. | June 18, 2001 | $3,000 | USCL |
| m. | June 18, 2001 | $12,000 | USCL |
| n. | July 19, 2001 | $20,000 | USCL |
| o. | August 13, 2001 | $20,000 | USCL |
| p. | August 29, 2001 | $20,000 | USCL |
| q. | September 19, 2001 | $25,000 | USCL |
| r. | October 4, 2001 | $10,000 | USCL |
| s. | November 20, 2001 | $10,000 | USCL |
| t. | December 5, 2001 | $10,000 | USCL |

10. It was part of the conspiracy that at **CLAUDIA NAVARRO's** direction, OSCAR PATINO received checks from individuals unknown to him to deposit into the USCL account. For example, on or about October 18, 2001, **CLAUDIA NAVARRO** emailed OSCAR PATINO instructing him that he will be receiving, via DHL, American bank checks in the amount of $27,000.00 dollars and that she will send PATINO the letter of instruction to direct all the money they can to Juki. On or about October 19, 2001, PATINO collected and deposited eight bank checks totaling $27,000,00 dollars, into the USCL account.

All in violation of Title 18, United States Code, Section 1956(h).

<u>COUNTS TWO THROUGH SIX</u>
**(18 U.S.C. §§ 1957--Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; 18 U.S.C. § 2--Aiding and Abetting)**

The Grand Jury further charges that:

On or about the following dates, in the District of Massachusetts, and in Cali, Colombia, and elsewhere,

**1. CLAUDIA NAVARRO,
   a/k/a CLAUDIA NAVARRO-MONTERO,**

a defendant herein, did knowingly and intentionally engage and attempt to engage and did aid, abet, counsel, command, induce and procure and cause the engaging and attempts to engage in the following monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit of the following amounts of money orders, such property having been derived from a specified unlawful activity, that is, narcotics trafficking, into the Sovereign Bank account, USCL #30900001923, a joint account of OSCAR PATINO and **CLAUDIA NAVARRO** in the District of Massachusetts:

| <u>Count</u> | <u>Date</u> | <u>Amount</u> |
|---|---|---|
| 2 | June 18, 2001 | $12,000 |
| 3 | July 19, 2001 | $20,000 |
| 4 | August 13, 2001 | $20,000 |
| 5 | August 29, 2001 | $20,000 |

9

6          September 19, 2001     $25,000


     All in violation of Title 18, United States Code, Sections 1957 and 2.

## 18 USC § 982--MONEY LAUNDERING FORFEITURE ALLEGATION

The Grand Jury further charges that:

1. As a result of the offenses alleged in Counts One through Six as to defendant **CLAUDIA NAVARRO**, charging violations of Title 18, United States Code, Sections 1956(h) and Section 1957, and in Count One as to defendant **IVAN VELEZ**, charging violations of Title 18, United States Code, Sections 1956(h).

> **1. CLAUDIA NAVARRO,**
> **a/k/a CLAUDIA NAVARRO-MONTERO,**
>
> **and**
>
> **2. IVAN VELEZ,**

defendants herein, if convicted, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

A) All right, title, and interest in any and all property, real or personal, involved in each offense in violation of Title 18, United States Code, Section 1956(h) or Section 1957, for which that defendant is convicted, and all property traceable to such property, including, but not limited to: i) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956 and 1957; ii) all commissions, fees and other property constituting proceeds obtained as a result of those violations;