

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

*1 Courthouse Way, Suite 9200*
*Boston, Massachusetts 02210*

March, 1 2004

**VIA FACSIMILE AND FIRST CLASS MAIL**

Joseph Oteri
Oteri, Weinberg & Lawson
20 Park Plaza
Boston, MA 02116
Fax (617) 338-9538

> FILED IN
> OPEN COURT
> 5/19/04 M. ___
> Dep. Clerk

> Re:  United States v. Claudia Navarro
>      <u>Criminal No. 03-CR-10331 (RGS)</u>

Dear Mr. Oteri:

     This letter sets forth the Agreement between the United
States Attorney for the District of Massachusetts ("the U.S.
Attorney") and your client, ("Defendant"), in the above-captioned
case.  The Agreement is as follows:

     1.  <u>Change of Plea</u>

     At the earliest practicable date, or on such date as is set
by the Court, Defendant will plead guilty to the following counts
of the Indictment:

COUNT ONE        (18 U.S.C. § 1956(h) - Conspiracy to Commit Money
                 Laundering by:
                   (a) engaging in financial transactions knowing
                       that the property involved represented the
                       proceeds from some form of unlawful activity,
                       that is, the distribution of controlled
                       substances, and knowing that the transactions
                       were designed, in whole or in part, (i) to
                       conceal and disguise the proceeds of this
                       specified unlawful activity and (ii) to avoid
                       a transaction reporting requirement under
                       federal law in violation 18 U.S.C. § 1956;
                       and by;
                   (b) knowingly engaging in monetary transactions
                       in criminally derived property that was of a

value greater than $10,000 in violation 18
U.S.C. § 1957.)

COUNTS TWO      (18 U.S.C. § 1957 - Engaging in Monetary
THROUGH SIX     Transactions in Property Derived from a Specified
                Unlawful Activity, that is narcotics trafficking);

Defendant expressly and unequivocally admits that she in fact
knowingly, intentionally and willfully committed the crimes
charged in Counts One through Six of the Indictment, and is in
fact guilty of those offenses.

2.    <u>Penalties</u>

    Defendant faces a maximum statutory term of imprisonment of
twenty years, a maximum fine of $500,000 or twice the value of
the funds involved in the money laundering, whichever is greater,
a maximum statutory term of three years supervised release, and a
$100.00 special assessment, on Count One.

    Defendant faces a maximum statutory term of imprisonment of
ten years, a maximum fine of $500,000 or twice the value of the
funds involved in the money laundering, whichever is greater, a
maximum statutory term of three years supervised release, and a
$100.00 special assessment, on each of Counts Two through Six of
the Indictment.

3.    <u>Sentencing Guidelines</u>

    The parties agree to the following Sentencing Guidelines
calculations, based on the November 2002 Sentencing Guidelines:

    (a)    BASE OFFENSE LEVEL FOR COUNT ONE: The parties agree to
           take the position that Defendant has a base offense
           level of 8, pursuant to U.S.S.G. § 2S1.1(a)(2), plus an
           additional 12 levels based on the value of the
           laundered funds, which is between $200,000 and
           $400,000, pursuant to U.S.S.G. §§ 2B1.1(b)(1)(G) and
           2S1.1(a)(2).

    (b)    SPECIFIC OFFENSE CHARACTERISTICS FOR COUNT ONE:

           (i)    The parties agree to take the position that the
           proceeds attributed to Defendant are drug proceeds,
           which results in an increase of 6 levels, pursuant to
           U.S.S.G. § 2S1.1(b)(1).

           (ii)   The parties agree to take the position that

2

because the Defendant is convicted under 18 U.S.C. §
1956, she is subject to an increase of 2 offense
levels, pursuant to U.S.S.G. §2S1.1(b)(2)(B).

(iii) The parties agree to take the position that this
results in an offense level of 28, minus three levels
for acceptance of responsibility, which results in an
adjusted offense level of 25.

(c)   OFFENSE LEVEL FOR COUNTS TWO THROUGH SIX:

For Counts Two through Six, defendant has a base
offense level of 8, pursuant to U.S.S.G. § 2S1.1(a)(2),
plus an additional 12 levels based on the value of the
laundered funds, which is between $200,000 and
$400,000, pursuant to U.S.S.G. §§ 2B1.1(b)(1)(G) and
2S1.1(a)(2).  Specific offense characteristics result
in an increase of 6 levels because the proceeds are
drug proceeds, pursuant to U.S.S.G. § 2S1.1(b)(1), plus
an additional 1 level for conviction under 18 U.S.C. §
1957, pursuant to 2S1.1(b)(2)(A).  After subtracting
three levels for acceptance of responsibility, the
adjusted offense level is 24.

(d)   GROUPING: The parties agree that since the 18 U.S.C. §
1956(h) violation charged in Count One results in the
highest offense level and since the violations charged
in Count One stem from the same financial criminal
activity as the 18 U.S.C. § 1957 violations charged in
Counts Two through Six, Counts Two through Six are
grouped under Count One pursuant to 3D1.2(d).

(e)   ACCEPTANCE OF RESPONSIBILITY: Based on Defendant's
prompt acceptance of personal responsibility for the
offenses of conviction in this case, and information
known to the U.S. Attorney at this time, the U.S.
Attorney agrees to recommend that the Court reduce by
three levels Defendant's Adjusted Offense Level,
pursuant to U.S.S.G. § 3E1.1.

The U.S. Attorney specifically reserves the right not
to recommend a reduction under U.S.S.G. § 3E1.1 if, at
any time between her execution of this Agreement and
sentencing Defendant:

a)    Fails to admit a complete factual basis for the
plea;

3

b)   Fails to truthfully admit her conduct in the
     offenses of conviction;

c)   Falsely denies, or frivolously contests, relevant
     conduct for which Defendant is accountable under
     U.S.S.G. § 1B1.3;

d)   Fails to provide truthful information about her
     financial status;

e)   Gives false or misleading testimony in any
     proceeding relating to the criminal conduct
     charged in this case and any relevant conduct for
     which Defendant is accountable under U.S.S.G. §
     1B1.3;

f)   Engages in acts which form a basis for finding
     that Defendant has obstructed or impeded the
     administration of justice under U.S.S.G. § 3C1.1;

g)   Intentionally fails to appear in Court or violates
     any condition of release;

h)   Commits a crime; and/or

i)   Attempts to withdraw her guilty plea.

Defendant expressly understands that she may not withdraw
her plea of guilty if, for any of the reasons listed above, the
U.S. Attorney does not recommend that she receive a reduction in
Offense Level for acceptance of responsibility.

Defendant expressly understands that, in addition to
declining to recommend an acceptance-of-responsibility
adjustment, the U.S. Attorney may seek an upward adjustment
pursuant to U.S.S.G. § 3C1.1 if Defendant obstructs justice after
the date of this Agreement.

4.   <u>Sentence Recommendation</u>

Absent the filing of a motion for a downward departure,
pursuant to U.S.S.G. § 5K1.1, the U.S. Attorney agrees to
recommend the following sentence before the Sentencing Court:

(a)  A sentence of imprisonment within the applicable
     Guideline Sentencing Range as determined by the Court;

(b)  A fine within the applicable fine range under the

Sentencing Guidelines, unless the Court finds, pursuant to USSG § 5E1.2(e), that Defendant is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay a fine;

(c)    A term of supervised release of 3 years;

(d)    A mandatory special assessment of $600.00.

Neither the U.S. Attorney nor Defendant will seek adjustments to the offense level on any ground, except as explicitly provided above in Section 3.  Moreover, neither the U.S. Attorney nor Defendant will seek a departure on any ground from the Sentencing Guidelines, except under the conditions explicitly set forth below in Section 9.  However, as to Section 9, if a downward departure is not granted under U.S.S.G. § 5K1.1, the Defendant reserves the right to then argue that she is entitled to a downward adjustment pursuant to USSG § 5K2.20 based on Aberrant Behavior.  Based upon the information known to the U.S. Attorney at this time, the U.S. Attorney will oppose a downward adjustment pursuant to USSG § 5K2.20.

   5.    Mandatory Special Assessment

Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless affirmatively relieved of this obligation by the District Court.

   6.    Protection of Assets for Payment of Restitution, Forfeiture and Fine

Defendant agrees not to transfer, or authorize the transfer of, any asset which has been restrained by Order of the Court in this case or any asset, whether or not restrained, which Defendant has agreed to forfeit pursuant to this Agreement.

Defendant agrees not to transfer, or authorize the transfer of any other asset in which she has an interest without prior express written consent of the U.S. Attorney, except for:

                (1)    Assets subject to superior, secured interests of innocent third parties, in which Defendant has an equity interest of less than $ 1,000;

                (2)    Ordinary living expenses necessary to house, clothe, transport and feed Defendant and those to whom she owes a legal duty of support, so long as

such assets do not exceed $2,000 per month; and

(3) Attorney's fees incurred in connection with this criminal case.

This prohibition shall be effective as of the date of Defendant's execution of this Agreement and continue until the fine, forfeiture and/or restitution ordered by the Court at sentencing and any tax liability incurred as a result of the conduct charged in the Indictment is satisfied in full.

Defendant further agrees that, prior to sentencing, she will truthfully and accurately complete the sworn financial statement enclosed with this Agreement.

7.   Court Not Bound By Agreement

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge. Within the maximum sentence which Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge.  Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B) (prior to December 1, 2002, was designated Section 11(e)(1)(B)).  Defendant may not withdraw her plea of guilty regardless of what sentence is imposed.  Nor may Defendant withdraw her plea because the U.S. Probation Office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties.  In the event that the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the U.S. Attorney, the U.S. Attorney reserves the right to defend the sentencing judge's calculations and sentence in any subsequent appeal or collateral challenge.

8.   Waiver of Rights to Appeal and to Bring Collateral Challenge

Defendant is aware that she has the right to challenge her sentence and guilty plea on direct appeal.  Defendant is also aware that she may, in some circumstances, be able to argue that her plea should be set aside, or her sentence set aside or reduced, in a collateral challenge such as pursuant to a motion under 28 U.S.C. § 2255.

In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant knowingly and voluntarily

6

waives her right to appeal or collaterally challenge:

(1)    Defendant's guilty plea and any other aspect of
       Defendant's conviction, including, but not limited
       to, any rulings on pretrial suppression motions or
       any other pretrial dispositions of motions and
       issues.

(2)    Any finding by the Court that the total offense
       level is 25 or less, even if the Court employs a
       Guidelines analysis different from that set forth
       in Paragraph 3.

9.    <u>Cooperation</u>

      a.    <u>Terms of Cooperation</u>

Defendant agrees to cooperate fully with law enforcement
agents and government attorneys.  She must provide complete and
truthful information to all law enforcement personnel.  If her
testimony is requested, she must testify truthfully and
completely before any grand jury, and at any hearing and trial.
Defendant must answer all questions put to him by any law
enforcement agents or government attorneys and must not withhold
any information.  She must not attempt to protect any person or
entity through false information or omission, or to implicate
falsely any person or entity.  Upon request, she must furnish all
documents, objects and other evidence in her possession, custody
or control that are relevant to the government's inquiries.

Defendant understands that a superseding indictment to add a
currently unindicted co-conspirator is anticipated in this case
and that she will testify before the grand jury in regard to this
anticipated superseding indictment.  Defendant understands and
agrees that she will be named in this superseding indictment
containing the same criminal charges as set forth in the current
indictment.  Should this superseding indictment be returned by
the grand jury, Defendant agrees that she will plead guilty to
Counts One through Six in the superseding indictment instead of
in the current indictment.  This superseding indictment is
attached and fully incorporated herein.  Defendant agrees that
although the purpose of her testimony is to serve as evidence
against currently unindicted co-conspirators, her testimony in
the grand jury may be used against her should the grand jury
consider her testimony in returning the superseding indictment
against her.   The Defendant agrees that her testimony may be
used against her for the limited purpose of obtaining the
superseding indictment and she waives any immunity rights that

7

may have been conferred upon her in the December 9, 2004, proffer letter and/or in this agreement for this limited purpose.

Defendant understands that she has a right to have counsel present when communicating with representatives of the government concerning the criminal conduct with which she has been charged. To facilitate her cooperation, Defendant hereby knowingly and voluntarily waives this right with respect to all debriefings by law enforcement agents and government attorneys and all appearances to testify. This waiver may be revoked at any time by a specific request by Defendant or her counsel without otherwise affecting the terms or enforceability of this Agreement.

To enable the Court to have the benefit of all relevant sentencing information, Defendant waives any rights she may have to prompt sentencing and will join in any requests by the U.S. Attorney that sentencing be postponed until Defendant's cooperation is complete. Defendant understands that the date of Defendant's sentencing is within the sole discretion of the Court and that this Agreement may require Defendant's cooperation to continue even after Defendant has been sentenced. Defendant's failure to continue to cooperate pursuant to the terms of this Agreement after sentence is imposed shall constitute a breach of this Agreement by Defendant.

        b.   Substantial Assistance Motion

In the event that Defendant provides substantial assistance in the investigation or prosecution of another person who has committed a criminal offense, the U.S. Attorney agrees that, at or before the time of sentencing, the U.S. Attorney will make a motion under U.S.S.G. § 5K1.1 so that the sentencing court may impose a sentence below that which otherwise would be required under the Sentencing Guidelines and the relevant statutes. The determination whether Defendant has provided substantial assistance rests solely in the discretion of the U.S. Attorney and is not subject to appeal or review. The U.S. Attorney expressly reserves the right to decline to file a motion pursuant to U.S.S.G. § 5K1.1 if Defendant violates any of the requirements of honesty and candor detailed in paragraph 9(a) above, or engages in any criminal conduct after the date she signs this Agreement. Defendant may not withdraw her plea if the U.S. Attorney determines that Defendant has not rendered substantial assistance, or if the Court refuses to grant the U.S. Attorney's motion for a downward departure.

c.    <u>Sentence Recommendation with Substantial Assistance</u>

If Defendant provides substantial assistance, subject to all the provisions of paragraphs 9(a) and (b) above, the U.S. Attorney will advise the sentencing judge of the full nature, extent and value of the assistance provided by Defendant.

d.    <u>Letter Immunity</u>

In return for Defendant's full and truthful cooperation, the U.S. Attorney agrees not to use any information provided by Defendant pursuant to this Agreement or pursuant to the proffer letter dated December 9, 2004 (or any information directly or indirectly derived therefrom) against Defendant in any criminal case except in a prosecution (1) for perjury or obstruction of justice, or for making a false statement after the date of this Agreement; or (2) for an act of physical violence against the person of another, or conspiracy to commit any such act of violence.   The U.S. Attorney reserves the right to respond fully and completely to all requests for information by the District Court and U.S. Probation Office in this case.   All such disclosures, however, shall be made subject to the provisions constraining the use of this information by the District Court and U.S. Probation Office contained in U.S.S.G. § 1B1.8(a) and the commentary thereto.   Notwithstanding the provisions of U.S.S.G. § 1B1.8(b)(5) and the commentary thereto, the U.S. Attorney agrees to take the position that, at the time of sentencing, information provided by Defendant pursuant to this Agreement should not be used either in determining where within the applicable guideline range to sentence Defendant or in determining whether, or to what extent, a departure from the Sentencing Guidelines is warranted.

If the U.S. Attorney determines that Defendant has breached this Agreement by making any false, incomplete or misleading statement, or by providing any false, incomplete or misleading information to any law enforcement personnel, grand jury or court, the U.S. Attorney may terminate this Agreement as set forth below, and may also prosecute Defendant for any and all offenses that could be charged against him in the District of Massachusetts, including, but not limited to, false statements and perjury.

10.   <u>Forfeiture</u>

Defendant will forfeit to the United States any and all

9

assets subject to forfeiture pursuant to 18 U.S.C. § 982 and 31 U.S.C. § 5317(c) as a result of her guilty plea.  The assets to be forfeited include, but are not limited to, cash, stocks, bonds, certificates of deposit, tangible and intangible personal property and real estate.

Defendant therefore consents to the forfeiture of all of Defendant's interests in all such forfeitable assets to the United States.  The forfeitures may be carried out criminally, civilly, or administratively in the government's discretion.

Defendant agrees to assist law enforcement agents and government attorneys in locating, liquidating, recovering, returning to the United States, and forfeiting all forfeitable assets, wherever located, and in whatever names the assets may be held.  Defendant shall promptly take whatever steps are deemed necessary by the U.S. Attorney or ICE or IRS to transfer possession of, and clear title to, all forfeitable assets to the United States.  Such steps may include, but are not limited to, executing and surrendering all title documents, and signing consent decrees of forfeiture, deeds, sworn statements relating the factual bases for forfeiture, and any other documents deemed necessary by the government to complete the criminal, civil, or administrative forfeiture proceedings which may be brought against the assets identified in this section and against any other forfeitable assets involved in or related to any of the criminal acts charged in the indictment.

Defendant hereby acknowledges and agrees that the United States is not limited to forfeiture of the assets specifically listed in this section.  If the U.S. Attorney determines that any directly forfeitable assets of Defendant cannot be located upon exercise of due diligence, or have been transferred or sold to, or deposited with, a third party, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty, then the United States shall be entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the directly forfeitable assets.

In order to assist the United States in locating and forfeiting directly forfeitable and substitute assets, Defendant shall deliver to the U.S. Attorney within thirty days after signing this Agreement a sworn financial statement, executed under the pains and penalties of perjury, fully and truthfully disclosing the existence, nature and location of all assets in which Defendant currently has any legal or beneficial interest, and all assets over which Defendant has exercised control, or has

10

had any legal or beneficial interest, at any time from August, 2000 to the present.  At the request of the U.S. Attorney, Defendant further agrees to be deposed with respect to Defendant's assets.

Forfeiture of substitute assets shall not be deemed an alteration of Defendant's sentence.  The forfeitures set forth herein shall not satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon Defendant, nor shall the forfeitures be used to offset Defendant's tax liability or any other debt owed to the United States.

In addition to all other waivers or releases set forth in this Agreement, Defendant hereby waives any and all claims arising from or relating to the forfeitures set forth in this section, including, without limitation, any claims arising under the Double Jeopardy Clause of the Fifth Amendment, or the Excessive Fines Clause of the Eighth Amendment, to the United States Constitution, or any other provision of state or federal law.

The United States District Court for the District of Massachusetts shall retain jurisdiction to enforce the provisions of this section.

Defendant hereby waives and releases any and all claims she may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

### 11. Financial Statement

The defendant agrees to fully and truthfully complete a Financial Statement in a form prescribed by the United States Attorney's Office prior to sentencing.  Failure to truthfully complete the form in its entirety, whenever requested, will constitute a breach of this Agreement and may, at the sole discretion of the United States Attorney's Office, result in the revocation of the Agreement and the institution or reinstatement of other criminal charges.

### 12.   Information For Presentence Report

Defendant agrees to provide all information requested by the U.S. Probation Office concerning her assets.

11

13. <u>Civil Liability</u>

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Defendant may have incurred or may incur as a result of her conduct and her plea of guilty to the charges specified in paragraph one of this Agreement.  Defendant agrees to cooperate with employees of the IRS, the Civil Division of the U.S. Attorney's Office, and law enforcement agents working with attorneys in the Civil Division of the U.S. Attorney's Office, in making an assessment of her civil liabilities.  Defendant specifically authorizes release by the FBI, IRS, ICE or other investigative agency to the aforementioned agencies and their representatives of information for purposes of making that assessment.  Defendant further agrees to assent to the filing and allowance of a motion under Rule 6(e) of the Federal Rules of Criminal Procedure, to permit the disclosure of matters occurring before the grand jury for this purpose.

14. <u>Rejection of Plea By Court</u>

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Defendant, this agreement shall be null and void at the option of the U.S. Attorney.

15. <u>Breach of Agreement</u>

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement, has violated any condition of her pretrial release, or has committed any crime following her execution of this Agreement, the U.S. Attorney may, at her sole option, be released from her commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing.  The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether she elects to be released from her commitments under this Agreement.  Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement.  Defendant recognizes that no such breach by her of an obligation under this Agreement shall give rise to grounds for withdrawal of her guilty plea.  Defendant understands that, should she breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by her, and any information, materials, documents or objects which may be provided by her to the government subsequent to this Agreement, without any

12

limitation.  In this regard, Defendant hereby waives any defense to any charges which she might otherwise have under any statute of limitations or the Speedy Trial Act.

16.  Who Is Bound By Agreement

This agreement is limited to the United States Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

17.  Complete Agreement

This letter contains the complete agreement between the parties relating to the disposition of this case.  No promises, representations or agreements have been made other than those set forth in this letter.  This Agreement supersedes prior understandings, if any, of the parties, whether written or oral. This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below.  Please also sign below as Witness.  Return the original of this letter to Assistant U.S. Attorney Cynthia W. Lie.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:

JAMES B. FARMER
Assistant U.S. Attorney
Chief,
Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief,
Criminal Division

CYNTHIA W. LIE
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

CLAUDIA NAVARRO
Defendant

Date: 3/9/04

I certify that CLAUDIA NAVARRO has read this Agreement and that we have discussed its meaning. I believe she understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly.

JOSEPH OTERI, Esq.
Attorney for Defendant

Date: 3/9/04

14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. |
| | ) | |
| v. | ) | VIOLATIONS: |
| | ) | |
| 1. CLAUDIA NAVARRO, | ) | |
| a/k/a CLAUDIA | ) | 18 U.S.C. § 1956(h) |
| NAVARRO-MONTERO, | ) | Conspiracy to Commit Money |
| | ) | Laundering |
| and | ) | |
| | ) | 18 U.S.C. § 1957 - |
| 2. IVAN VELEZ, | ) | Engaging in Monetary Transactions |
| Defendants. | ) | in Property Derived from Specified |
| | ) | Unlawful Activity |
| | ) | |
| | ) | 18 U.S.C. § 2 – |
| | ) | Aiding And Abetting |
| | ) | |
| | ) | 18 U.S.C. § 982 - |
| | ) | Money Laundering Forfeiture |

### SUPERSEDING INDICTMENT

### COUNT ONE
(18 U.S.C. §§ 1956(h) --
Conspiracy to Commit Money Laundering)

The Grand Jury charges that:

From a time unknown to the Grand Jury, but at least by in or about August 2000, and continuing thereafter until at least April 2003, in Dracut, Weston, Lowell, Waltham, and Billerica, in the District of Massachusetts, in New York, in Florida, and in Cali, Colombia, and elsewhere,

1. CLAUDIA NAVARRO,
a/k/a CLAUDIA NAVARRO-MONTERO,

and

2. IVAN VELEZ,

the defendants herein, did unlawfully and knowingly combine,
conspire, confederate, and agree with each other and with persons
known and unknown to the Grand Jury, to commit certain offenses
under Title 18, United States Code, Sections 1956 and 1957, as
follows:

   (a) to engage in financial transactions affecting interstate
   commerce and foreign commerce, knowing that the property
   involved represented the proceeds from some form of unlawful
   activity, that is, the distribution of controlled
   substances, and knowing that the transactions were designed,
   in whole or in part, to conceal and disguise the nature, the
   location, the source, the ownership, and the control of the
   proceeds of this specified unlawful activity in violation of
   18 U.S.C. 1956(a)(1); and

   (b) knowingly to engage in monetary transactions, affecting
   interstate commerce and foreign commerce, in criminally
   derived property that was of a value greater than $10,000 in
   violation of 18 U.S.C. 1957.

## Manner and Means of the Conspiracy

   1.   It was part of the conspiracy that OSCAR PATINO and
defendants **CLAUDIA NAVARRO** and **IVAN VELEZ** engaged in financial
transactions involving the deposit of cash proceeds and money
orders, which involved the proceeds of a specified unlawful
activity, into bank accounts, including the following two bank

2

accounts in the District of Massachusetts, to conceal or disguise

the nature and source of the proceeds of illegal activity:

> Sovereign Bank
> Account #30900001923
> USCL Inc.
> 75 C Street
> Dracut, MA 01826 (hereinafter and for purposes of the
> entire Indictment the "USCL Account")
>
> Sovereign Bank
> Account #3090015598 (originally Fleet Bank Account
> #9405284110)
> Claudia Navarro-Montero
> D/B/A Universal De Suministros
> 552 North Avenue
> Weston, MA 02493 (hereinafter and for purposes of the
> entire Indictment the "Navarro Account")

a. The UCSL Account and the Navarro Account were both

opened as joint accounts by OSCAR PATINO and **CLAUDIA NAVARRO**.

b. At all times relevant to the Indictment, the USCL

Account and the Navarro Account were joint accounts over which

only OSCAR PATINO and **CLAUDIA NAVARRO** had signature authority.

c. At all times relevant to the indictment, OSCAR

PATINO resided at 75 C Street in Dracut, Massachusetts and worked

at 552 North Avenue in Weston, Massachusetts.

d. At all times relevant to the Indictment, defendant

**CLAUDIA NAVARRO** was doing business as Universal De Suministros.

e. At all times relevant to the Indictment, Sovereign

Bank was a domestic financial institution within the meaning of

Title 31, United States Code, Section 5313(a).

2.  It was part of the conspiracy that OSCAR PATINO and

3

**NAVARRO** instructed OSCAR PATINO to pick up $100,000 in cash from a man in Miami, Florida.

7.  It was part of the conspiracy that **IVAN VELEZ** was to meet OSCAR PATINO and deliver this $100,000 cash to OSCAR PATINO. It was part of the conspiracy that **CLAUDIA NAVARRO** told **IVAN VELEZ** that her husband OSCAR PATINO would be the person to meet **IVAN VELEZ** in Miami to pick up the cash.

a.  On or about May 30 and May 31, 2001, OSCAR PATINO flew from Boston, Massachusetts to Miami, Florida.  OSCAR PATINO met **IVAN VELEZ** at General Express Services.  **IVAN VELEZ** and OSCAR PATINO then drove to **IVAN VELEZ'** home.  At his home, **IVAN VELEZ** gave OSCAR PATINO at least $80,000 in cash.  OSCAR PATINO then flew back to Boston, Massachusetts with this cash.

b.  In the May 28, 2001 email, defendant **CLAUDIA NAVARRO** also instructed OSCAR PATINO to have the cash put into the USCL Account.

c.  On or about the following dates, OSCAR PATINO structured at least $89,000 cash into the following Sovereign Bank accounts, by breaking down this sum of cash into amounts below $10,000, and by depositing these smaller amounts of cash at Sovereign Bank branches, in the District of Massachusetts, as follows:

| Date | Amount | Branch of Deposit | Account |
|------|--------|-------------------|---------|
| a. May 31, 2001 | $9,000 | Dracut | USCL |

| | | | |
|---|---|---|---|
| b. May 31, 2001 | $9,000 | Lowell City Hall | USCL |
| c. May 31, 2001 | $9,000 | Lowell Merrimack Street | USCL |
| d. May 31, 2001 | $9,000 | Lowell Wood Street | USCL |
| e. May 31, 2001 | $9,000 | Chelmsford Center | USCL |
| f. May 31, 2001 | $9,000 | Billerica | USCL |
| g. June 1, 2001 | $9,000 | Moody Street Waltham | USCL |
| h. June 1, 2001 | $9,000 | Weston | USCL |
| i. June 4, 2001 | $9,000 | Center Street Weston | NAVARRO |
| j. June 4, 2001 | $8,000 | Moody Street Waltham | NAVARRO |

d.   In the May 28, 2001 email, defendant **CLAUDIA NAVARRO** also instructed OSCAR PATINO to wire transfer $63,491.10 of this deposited cash to Juki Union Special, Inc.

e.   On or about June 1, 2001, OSCAR PATINO wire transferred $63,446.10 of the cash he deposited into the USCL Account on behalf of Juki Union Special Account, to account number 210-004-687, at the Bank of Toyko Mitsubishi Trust in New York.

8.   It was part of the conspiracy that in addition to the $9,000 and $8,000 cash deposits OSCAR PATINO made on June 4, 2001, he also deposited a check for $3,000 into the NAVARRO account on June 6, 2001 (totaling $20,000 for the period).  On or about June 6, 2001, defendant **CLAUDIA NAVARRO** wrote out and signed four (4) sequential checks out of the NAVARRO account, each check in the amount of $5,000 (totaling $20,000), each check

6

payable to the same person, Antonio Jose Isaacs.  These four
checks were then cashed and deposited all on the next day, June
7, 2001.

9.    It was part of the conspiracy that on or about the
following dates, at defendant **CLAUDIA NAVARRO's** direction, OSCAR
PATINO received large bundles of money orders via delivery
companies, from sender individuals unknown to him.  For example,
on or about August 27, 2001, **CLAUDIA NAVARRO** emailed OSCAR PATINO
stating that she wanted him to collect the other $20 (meaning
$20,000).  As set forth below, on or about August 29, 2001,
PATINO collected and deposited $20,000 in money orders.  OSCAR
PATINO deposited the following money orders into Sovereign Bank
accounts, in the District of Massachusetts, as follows:

| Date | Amount | Account |
|------|--------|---------|
| a. August 15, 2000 | $3,900 | NAVARRO |
| b. August 15, 2000 | $9,300 | NAVARRO |
| c. August 15, 2000 | $9,850 | NAVARRO |
| d. August 16, 2000 | $9,550 | USCL |
| e. March 2, 2001 | $4,000 | USCL |
| f. March 8, 2001 | $5,000 | USCL |
| g. March 19, 2001 | $5,000 | NAVARRO |
| h. March 19, 2001 | $5,000 | USCL |
| i. April 23, 2001 | $2,663.15 | NAVARRO |
| j. April 23, 2001 | $8,147.02 | USCL |

|                         |             |      |
|-------------------------|-------------|------|
| k. April 23, 2001       | $9,190.62   | USCL |
| l. June 18, 2001        | $3,000      | USCL |
| m. June 18, 2001        | $12,000     | USCL |
| n. July 19, 2001        | $20,000     | USCL |
| o. August 13, 2001      | $20,000     | USCL |
| p. August 29, 2001      | $20,000     | USCL |
| q. September 19, 2001   | $25,000     | USCL |
| r. October 4, 2001      | $10,000     | USCL |
| s. November 20, 2001    | $10,000     | USCL |
| t. December 5, 2001     | $10,000     | USCL |

10.  It was part of the conspiracy that at **CLAUDIA NAVARRO's**
direction, OSCAR PATINO received checks from individuals unknown
to him to deposit into the USCL account.  For example, on or
about October 18, 2001, **CLAUDIA NAVARRO** emailed OSCAR PATINO
instructing him that he will be receiving, via DHL, American bank
checks in the amount of $27,000.00 dollars and that she will send
PATINO the letter of instruction to direct all the money they can
to Juki.  On or about October 19, 2001, PATINO collected and
deposited eight bank checks totaling $27,000,00 dollars, into the
USCL account.

All in violation of Title 18, United States Code, Section
1956(h).

8

## COUNTS TWO THROUGH SIX
### (18 U.S.C. §§ 1957--Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; 18 U.S.C. § 2--Aiding and Abetting)

The Grand Jury further charges that:

On or about the following dates, in the District of Massachusetts, and in Cali, Colombia, and elsewhere,

### 1. CLAUDIA NAVARRO, a/k/a CLAUDIA NAVARRO-MONTERO,

a defendant herein, did knowingly and intentionally engage and attempt to engage and did aid, abet, counsel, command, induce and procure and cause the engaging and attempts to engage in the following monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit of the following amounts of money orders, such property having been derived from a specified unlawful activity, that is, narcotics trafficking, into the Sovereign Bank account, USCL #30900001923, a joint account of OSCAR PATINO and **CLAUDIA NAVARRO** in the District of Massachusetts:

| Count | Date | Amount |
|-------|------|--------|
| 2 | June 18, 2001 | $12,000 |
| 3 | July 19, 2001 | $20,000 |
| 4 | August 13, 2001 | $20,000 |
| 5 | August 29, 2001 | $20,000 |

9

6                    September 19, 2001        $25,000

        All in violation of Title 18, United States Code, Sections 1957 and 2.

## 18 USC § 982--MONEY LAUNDERING FORFEITURE ALLEGATION

The Grand Jury further charges that:

1. As a result of the offenses alleged in Counts One through Six as to defendant **CLAUDIA NAVARRO**, charging violations of Title 18, United States Code, Sections 1956(h) and Section 1957, and in Count One as to defendant **IVAN VELEZ**, charging violations of Title 18, United States Code, Sections 1956(h).

> 1. **CLAUDIA NAVARRO,**
> **a/k/a CLAUDIA NAVARRO-MONTERO,**
>
> **and**
>
> 2. **IVAN VELEZ,**

defendants herein, if convicted, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

A) All right, title, and interest in any and all property, real or personal, involved in each offense in violation of Title 18, United States Code, Section 1956(h) or Section 1957, for which that defendant is convicted, and all property traceable to such property, including, but not limited to: i) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956 and 1957; ii) all commissions, fees and other property constituting proceeds obtained as a result of those violations;

11

and iii) all property used in any manner or part to commit or to facilitate the commission of those violations;

B)   A sum of money equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

2.   If any of the forfeitable properties, as described in paragraph 1, above, as a result of any act or omission of any defendant --

> (A)   cannot be located upon the exercise of due diligence;
>
> (B)   have been transferred or sold to, or deposited with, a third person;
>
> (C)   have been placed beyond the jurisdiction of the Court;
>
> (D)   have been substantially diminished in value; or
>
> (E)   have been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. §853(p), incorporated by 18 U.S.C. §982(b)(1) and (2), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 1, above

12

All in violation of Title 18, United States Code, Section
982(a)(1).